UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN GULL, | ) |
| | ) No. 15 CV 4931 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Magistrate Judge Young B. Kim |
| ANN MARIE ESTRADA, | ) |
| | ) April 23, 2020 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff Alan Gull filed this action in 2015 seeking declaratory and equitable relief relating to six real properties, including a commercial office building located at 931 Ridge Road, Munster, Indiana ("Ridge Property"). Plaintiff alleged that his former spouse, Defendant Ann Marie Estrada, refused to acknowledge his interest in or contributions to the Ridge Property. The case was dismissed without prejudice in January 2016 after the parties settled their dispute. Before the court is Plaintiff's motion to reinstate the action and to enforce the terms of the parties' Settlement Agreement ("Agreement"). For the following reasons, the motion to reinstate is granted, and the court enforces the Agreement as explained below:

**Background**

The parties entered into the Agreement in December 2015. The Agreement contains a "Dispute Provision," requiring the parties to dismiss the case without prejudice, subject only to "the right to enforce the terms of this Agreement." (R. 38, Agreement ¶ 15.) The Agreement further provides that, in the event of a dispute,

the parties consent to the court's jurisdiction with the court's decisions being final. (Id.) On December 28, 2015, the parties filed a stipulation to dismiss the lawsuit, (R. 24), consenting to this court's jurisdiction, and appointing the court as a neutral arbitrator in the event of a dispute. (Id.) The court dismissed the case without prejudice on January 4, 2016, but retained jurisdiction solely to enforce the terms of the Agreement. (R. 25.)

Plaintiff now seeks to reinstate the case to resolve an alleged breach of the Agreement. (R. 27, Pl.'s Mot.) The Agreement states that Defendant retains 100 percent ownership in the Ridge Property, and that she is entitled to "all net income" from the property from November 1, 2015, through October 31, 2019, or the date on which the property is sold, whichever comes first. (R. 38, Agreement ¶¶ 7(a) & (b).) If the property is not sold before November 1, 2019, net income distributions change, with Plaintiff receiving 20 percent of the net income until the property is sold. (Id. ¶ 7(c).) Such payments of net income are to be made directly to the parties by the property management company. (Id.) Net income is defined as "the gross income generated by the Ridge Property minus normal monthly payments on the Ridge Permitted Indebtedness and the normal and customary operating expenses of the Ridge Property." (Id. ¶ 7(h).)

Plaintiff claims that since November 1, 2019, Defendant has received distributions from the Ridge Property, but he has not, and that Defendant informed him that he must pay a share of net losses for the property. (R. 27, Pl.'s Mot. at 2.) Plaintiff now seeks an order requiring his net income payments to be made to him

2

on a monthly basis, from November 2, 2019, through the date on which the property is sold, without any deductions for net losses. (Id.) He also seeks a copy of the Ridge Property financial reports pertaining to his rights. (Id.)

## Analysis

Plaintiff moves the court to reinstate this action to enforce the Agreement. (R. 27, Pl.'s Mot.) Neither party contests the court's power to enforce the Agreement. The court no doubt has "the inherent or equitable power summarily to enforce an agreement to settle a case before it." *Voso v. Ewton*, No. 16 CV 190, 2017 WL 365610, at *2 (N.D. Ill. Jan. 25, 2017) (internal citation omitted). But the court still must have subject matter jurisdiction to enforce a settlement agreement. Such jurisdiction may be conferred either from an independent basis, such as diversity of citizenship, or the court's explicit retention. *Id.* at *3.

Here the court explicitly retained jurisdiction to enforce the terms of the Agreement. (R. 25.) Where a federal district court expressly "reserves authority to enforce [a] settlement, the court possesses ancillary jurisdiction to enforce the settlement." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-82 (1994). While jurisdiction "does not exist in perpetuity," *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, No. 01 CV 9389, 2013 WL 6224489, at *5 (N.D. Ill. Dec. 2, 2013), Plaintiff moved in a timely manner after the alleged breach occurred.[1] Accordingly, the court has jurisdiction to enforce the Agreement.

---

[1] Plaintiff submitted correspondence showing that upon learning of Defendant's alleged breach of the Agreement Plaintiff promptly notified Defendant of the

3

The court will not retain such jurisdiction indefinitely, however, given that the parties' dispute relates to a private contractual matter. As the Seventh Circuit has explained:

> When a case settles, a district court typically dismisses the suit with prejudice and relinquishes jurisdiction; any action to enforce the settlement agreement must proceed as a state-law contract claim. Where, however, a district court dismisses a settled suit without prejudice, it may, as here, expressly retain ancillary jurisdiction for a time-limited motion to enforce the settlement.

*See White v. Adams*, No. 08-2801, 2009 WL 773877, at *1 (7th Cir. March 25, 2009) (internal citations omitted). As such, the parties should be cognizant of the court's limited jurisdiction.

Turning to the parties' current dispute, the parties agreed that the terms of the Agreement would be construed pursuant to Illinois law. (R. 38, Agreement ¶ 20.) Under Illinois law, a settlement agreement is interpreted in accordance with general contract principles. *Kaminski v. Wiens*, No. 10 CV 4322, 2016 WL 4701439, at *4 (N.D. Ill. Sept. 8, 2016). The objective theory of intent governs the construction of terms. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). "Secret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." *Id.* (internal quotations and citation omitted).

---

claimed violation and tried to resolve the dispute before filing the current motion. (See R. 28, Pl.'s Mem., Ex. D. at 29-32.)

### A. Payment Schedule

The parties agree that 20 percent of net income from the Ridge Property since November 1, 2019, must be paid to Plaintiff. (R. 34, Def.'s Resp. at 1-2; R. 36, Pl.'s Reply at 2.) But the parties disagree about the timing and formula to be applied in implementing this directive. Specifically, the parties dispute whether net income payments must be distributed to Plaintiff on a monthly basis, thereby requiring "net income" to be calculated by accounting for monthly income and then deducting monthly expenses. (R. 38, Agreement ¶ 7(h).) Under this calculation, Plaintiff would receive distributions for months in which monthly income exceeds monthly expenses, but not for the months in which the monthly expenses exceed the monthly income. (R. 28, Pl.'s Mem. at 2-5.) Plaintiff's proposal allows for him to receive income distributions even if the Ridge Property ultimately experiences a net loss at the end of the fiscal year.

Plaintiff favors monthly distributions and argues that he is not responsible for net losses. (Id.) He contends that because the definition of net income refers to "monthly payments," that meaning must control and net income must be distributed to him on a monthly basis. (R. 36, Pl.'s Reply at 2 (citing *Berg v. New York Life Ins. Co.*, 831 F.3d 426, 429 (7th Cir. 2016)).) He also contends that he is entitled to receive distributions whenever Defendant receives hers, regardless of whether she classifies her payments as net income distributions or otherwise. (Id.) Defendant disagrees, responding that the Agreement is silent—or, at the very least, imprecise and ambiguous—on the timing issue. (R. 34, Def.'s Resp. at 1-2.) She

5

argues that "fiscal flexibility" is needed to properly manage the property, making appropriate a more typical annualized calculation and distribution at fiscal year-end. (Id. at 2.) In the spirit of compromise, Defendant offers to distribute payments to Plaintiff biannually. (Id.) But she insists that Plaintiff pay his share of net losses. (Id. at 3.)

Defendant also argues that certain aspects of the Agreement—including the timing for net income payments—are ambiguous and must be construed against Plaintiff as the drafter. (Id.) However, she fails to offer any evidence to support her assertion that Plaintiff authored the Agreement. In his reply Plaintiff submits correspondence showing that while he drafted an initial version of the Agreement, Defendant noted "a number of comments and concerns" and offered revised language to replace the "problematic" language. (R. 36, Pl.'s Reply, Ex. A at 10-12.) Given that both parties were involved with the drafting of the Agreement, the court declines to construe the subject terms against Plaintiff as the purported drafter. *See Tranzact Techs., Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 546 n.2 (7th Cir. 2004) (noting that Illinois courts have not construed ambiguous terms against drafter where parties worked together to draft contract).

The court finds no ambiguity in the material terms at issue here. The Agreement undisputedly requires 20 percent of net income from the Ridge Property to be directed to Plaintiff from November 1, 2019, through the date of the sale of the property. (R. 34, Def.'s Resp. at 1-2; R. 36, Pl.'s Reply at 2.) And the Agreement plainly defines "net income" as gross income less "normal monthly payments" for

6

mortgage and customary operating expenses. (R. 38, Agreement ¶ 7(h).) As Defendant correctly points out, the Agreement does not specify when net income payments must be made to Plaintiff. Although there is facial appeal in Plaintiff's argument for monthly payments, when considering the net income definition as a whole, the most reasonable (and most equitable) interpretation of "net income" requires the "monthly payments" language to be cabined to the language to which it attaches—monthly mortgage payments—and not expanded to apply to all other language in the definition. Put differently, Plaintiff proposes that the court interpret the net income definition as follows: net income shall mean monthly gross income generated by the Ridge Property minus normal monthly mortgage payments and monthly normal and customary operating expenses. (R. 36, Pl.'s Reply at 2.) But the term "monthly" simply is not present in the definition as Plaintiff proposes. The "monthly payments" language instead is a descriptor solely for mortgage payment obligations. (R. 38, Agreement ¶ 7(h).)

Thus, to give effect to the parties' objective intent the court interprets the "monthly payments" language to describe monthly mortgage payments to be considered when calculating net income—and not to dictate the timing of net income payments. Given this interpretation of the plain language, the court agrees with Defendant that net income should be distributed on a more typical annualized basis, at fiscal year-end when the property management company reports income and losses. By doing so, all normal and customary operating expenses of the Ridge

Property, and all normal monthly mortgage payments, will be accounted for when calculating "net income," if any.

**B.     Net Loss**

As for Defendant's request for Plaintiff to share in any net losses, (R. 34, Def.'s Resp. at 3), the Agreement is clear. "Net income" is calculated by taking gross income generated from the Ridge Property and subtracting monthly mortgage payments and "normal and customary operating expenses" of the property. (R. 38, Agreement ¶ 7(h).) In light of the court's interpretation above, this language allows Plaintiff to receive net income distributions on an annualized basis, meaning that he will receive net income in a fiscal year in which gross income exceeds normal and customary operating expenses of the Ridge Property. Conversely, he will not receive net income in a fiscal year in which such expenses exceed gross income. The definition of net income does not contemplate Plaintiff to be responsible for 20 percent of the net losses or any net losses to be carried forward to subsequent fiscal years' income for purposes of calculating net income. (Id.)

The court appreciates that the parties now may disagree with the equality of the deal they struck in December 2015. But the court cannot rewrite the Agreement merely the settling parties desire a change in the terms. *See Kaminski*, 2016 WL 4701439, at *4. The Agreement represents a broad settlement reached on a number of wide-ranging issues. The court's role at this stage is only to enforce the Agreement as written, not to rewrite the definition of net income relating to the Ridge Property.

8

### C. Financial Reports

As to the production of financial reports, Plaintiff asserts that without such reports, he has no ability to ensure that his interests are being protected. (R. 28, Pl.'s Mem. at 5.) However, Defendant is correct that the Agreement does not require the disclosure of such reports. (R. 34, Def.'s Resp. at 3-4.) Accordingly, Defendant is not obligated under the Agreement to produce such reports. Although the court cannot order Defendant to provide documentation where the Agreement does not require her to do so, the court notes that following through with her previous offer to provide relevant financial reports may be in both parties' interests as a prudent way to reduce the likelihood of future litigation over payments related to the Ridge Property.

### Conclusion

For the foregoing reasons, the motion to reinstate is granted and the Agreement is enforced as explained herein.

                                          ENTER:

                                          _____
                                        Young B. Kim
                                        United States Magistrate Judge