UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN GULL, | ) |
| | ) No. 15 CV 4931 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANN MARIE ESTRADA, | ) |
| | ) August 5, 2020 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff Alan Gull filed this action in 2015 seeking declaratory and equitable relief relating to six real properties, including a commercial office building located at 931 Ridge Road, Munster, Indiana ("Ridge Property"). The case was dismissed without prejudice in January 2016 after the parties settled their dispute and was reinstated in April 2020 to enforce the parties' Settlement Agreement ("Agreement"). Before the court is Plaintiff's second motion to reinstate and to enforce the terms of the Agreement. For the following reasons, Plaintiff's motion is granted in the amount of $7,176.32:

**Background**

The parties entered into the Agreement in December 2015. The Agreement contains a "Dispute Provision," requiring the parties to dismiss the case without prejudice subject only to "the right to enforce the terms of this Agreement." (R. 38, Agreement ¶ 15.) In the Agreement the parties consented to the court's reserved jurisdiction and agreed that the court's decision as to any dispute will be final. (Id.)

On December 28, 2015, the parties filed a stipulation to dismiss the lawsuit. (R. 24.) On January 4, 2016, the court dismissed the case without prejudice but retained jurisdiction solely to enforce the terms of the Agreement. (R. 25.) The court has stated that it will not maintain such jurisdiction indefinitely. (R. 41.)

Under the Agreement, Defendant retains 100 percent ownership in the Ridge Property, but Plaintiff is entitled to 20 percent of the net income from the property until it is sold. (R. 38, Agreement ¶¶ 7(a), (c).) The Agreement defines net income as "the gross income generated by the Ridge Property minus normal monthly payments on the Ridge Permitted Indebtedness and the normal and customary operating expenses of the Ridge Property." (Id. ¶ 7(h).) The court previously determined that "net income" should be distributed on an "annualized basis," such as "at fiscal year-end when the property management company reports income and losses." (R. 41.)

Plaintiff now moves to reinstate the case to collect what he claims is his share of net income for the November/December 2019 time period.[1] (R. 42, Pl.'s Mot.; R. 43, Pl.'s Mem.)

## Analysis

Plaintiff seeks to reinstate the action to collect an additional $9,091.09 he claims he is owed in net income for the Ridge Property from November and December 2019. (R. 42, Pl.'s Mot.) Neither party disputes the court's authority to enforce the Agreement. (See R. 41.) Plaintiff argues that Defendant "wrongfully manipulated

---

[1] The Agreement allows Plaintiff to receive net income for the Ridge Property beginning in November 2019. (R. 38, Agreement ¶¶ 7(a), (c).)

2

the calculation of net income under the Agreement" to reduce her payment obligation. (R. 42, Pl.'s Mot. at 1.) Specifically, Plaintiff asserts that Defendant improperly included the following expenses in the November/December 2019 net income statement for the Ridge Property ("Net Income Statement"): (1) a semi-annual real estate tax payment; (2) an HVAC charge to install replacement units; and (3) depreciation. (R. 43, Pl.'s Mem. at 3.) Without these deductions, Defendant's alleged loss for the November/December 2019 period would transform into a gain, according to Plaintiff. (Id.)

Defendant counters that she does not "directly control, contribute or participate in the bookkeeping and accounting decisions and methodology" relating to the Ridge Property. (R. 46, Def.'s Resp. at 1.) Defendant denies asking or directing any accounting professional to manipulate "any accounting entry or methodology" relating to the Ridge Property or acting intentionally to create deception relating to Plaintiff's share of the net income. (Id.) Defendant argues that the Agreement stipulates only that net income be calculated by subtracting normal payments on the Ridge indebtedness and normal and customary operating expenses. (Id. at 5.) Ridge Property accountants followed this directive, using the same "basis of preparation" used when Plaintiff owned the property, according to Defendant. (Id.) Defendant asserts that Plaintiff seeks to change the formula for determining net income merely because it is "no longer advantageous" to him. (Id. at 3.)

In the Agreement the parties did not expressly define what constitutes "normal and customary operating expenses." (R. 38, Agreement ¶ 7(h).) Nonetheless, the

3

implied duty of good faith requires Defendant's calculation of net income to be reasonable. *See Didion Milling, Inc. v. Argo Distribution, LLC*, No. 05 CV 227, 2007 WL 702808, at *12, *15 (E.D. Wis. March 2, 2007) ("Parties to every contract have an implied duty of good faith and fair dealing."). "Good faith" is an "implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990). In determining the reasonableness of the disputed charges here, the court assumes that the terms of the Agreement reflect each party's intentions and evaluates the terms as they objectively appear. *See Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008).

First, Plaintiff argues that Defendant improperly included as an operating expense a semi-annual real estate tax payment, which was paid out of an escrow account rather than from 2019 income. (R. 43, Pl.'s Mem. at 4.) Plaintiff complains that real estate taxes are not paid out of "any one month's income of the Ridge Property" but instead are semi-annually paid out of a real estate tax escrow account. (R. 42, Pl.'s Mot. at 4; R. 52, Pl.'s Reply at 3.) As a result, Plaintiff reasons that deducting property taxes from both "monthly cash flow" and November/December 2019 income, as Defendant has done, "constitute[s] double dipping and is entirely inconsistent with the parties' Settlement Agreement." (R. 52, Pl.'s Reply at 3.)

Defendant responds that real estate taxes are correctly included as expenses regardless of which account services the funds. (R. 46, Def.'s Resp. at 3.) Defendant

4

contends that the parties' conflict is related to their different accounting methodologies. (Id.) While Plaintiff bases his formulation on a cash basis of accounting, Defendant represents that the company has always used the modified accrual basis of accounting. (Id.) Defendant argues that such method includes real estate tax escrow payments as part of Ridge Property's monthly mortgage payments, and payment of the semi-annual real estate taxes results in bookkeeping entries on both income and prepaid escrow account statements. (Id.)

The Internal Revenue Service ("IRS") provides guidance on distinguishing between accounting methodologies. According to the IRS, "[u]nder the cash method, you generally report income in the tax year you receive it and deduct expenses in the tax year in which you pay the expenses." Accounting Periods and Methods, IRS Pub. No. 538, Cat. No. 15068G, at *2 (Feb. 28, 2019). In contrast, "[u]nder the accrual method, you generally report income in the tax year you earn it, regardless of when payment is received," and report deductions for expenses in the tax year that you incur them, regardless of when payment is made. *Id.* at *2. A party generally cannot accrue real estate taxes—that is, cannot list them on an income statement—until the party pays them to the governmental authority. *Id.* at *18. But the IRS notes that an individual can "elect to accrue real estate tax related to a definite period ratably over that period." *Id.* The IRS provides an example:

> Juan Sanchez is a calendar year taxpayer who uses an accrual method. His real estate taxes for the real property tax year, July 1, 2019, to June 30, 2020, are $1,200. July 1 is the assessment and lien date. If Juan elects to ratably accrue the taxes, $600 will accrue in 2019 ($1,200 × 6/12, July 1-December 31) and the balance will accrue in 2020.

5

*Id.* In this example, while the "definite period" for the annual real property taxes was distributed over two calendar years, the taxpayer aligned his property taxes with his accrual method for each calendar year using a ratable accrual method.

The court accepts that the Ridge Property has always used a modified accrual method of accounting and finds it reasonable to allow its accountants to continue to use such methodology to calculate net income here. Nonetheless, the court rejects the argument that six months of real estate taxes should be included in the November/December 2019 Net Income Statement. "Whether a given method of accounting clearly reflects income is a question of fact," and "there can be circumstances in which the best accounting practice does not clearly reflect income." *Thor Power Tool Co. v. Comm'r*, 563 F.2d 861, 866 (7th Cir. 1977), *aff'd*, 439 U.S. 522 (1979). While it generally is consistent with the modified accrual accounting method to include all six months of real estate tax in a net income statement, here it is neither reasonable nor acceptable to deduct six months of real estate taxes for a two-month period. The Agreement requires the parties to consider "monthly" payments in its net income calculation. (R. 41.) Accordingly, for the November/December 2019 period, only two months of real estate taxes may be deducted as expenses.

Second, Plaintiff argues that an HVAC replacement is a capital expense, not a "normal and customary operating expense" under the Agreement, and therefore must be funded with the capital reserve fund rather than net income. (R. 43, Pl.'s Mem. at 6.) Defendant responds that "[u]nless a replacement of the unit extends the useful life of the asset (the building), which it does not, the replacement of the HVAC system

6

should be expensed rather than capitalized." (R. 46, Def.'s Resp. at 4.) The IRS provides standards for deducting and capitalizing expenditures related to tangible property, which can be applied using a "facts and circumstances analysis" to determine whether an expenditure is a capital improvement. IRS, *Tangible Property Regulations–Frequently Asked Questions* (updated 2020), *available at* https://www.irs.gov/businesses/small-businesses-self-employed/tangible-property-final-regulations. The key inquiry is whether a unit of property is improved, either by betterment, restoration, or adaptation to a new or different use. *Id.* Typically, a building's structural components, such as an HVAC system, are not considered independent units of property, but the IRS has carved out an exception for enumerated "key building systems" that can stand alone, including HVAC systems. *Id.* Because "[r]eplacement of a major component or substantial structural part" of a unit of property amounts to a restoration, the replacement and installation of an HVAC system is properly considered a capitalized expenditure. *Id.* As such, it should not be included in the net income calculation under the Agreement.

Third, Plaintiff argues that Defendant wrongfully deducted depreciation when calculating net income. Plaintiff contends that it is "unfair" for Defendant to distribute Ridge Property profits to herself, while at the same time "depriv[ing]" him of his share, "based on a book entry that has no impact on available cash." (R. 43, Pl.'s Mem. at 7.) He further asserts that depreciation should be excluded in the 2019 Net Income Statement because it was not mentioned in the 2018 Net Income Statement. (R. 52, Pl.'s Reply at 3.) "[T]he impact of depreciation should be

7

calculated into the basis of the property only 'if and when' the Ridge Property is sold, in order to apply to Plaintiff and Defendant equally," according to Plaintiff. (Id.) Defendant counters that "[d]epreciation is an ordinary and necessary operating expense" properly included in the net income calculation. (R. 46, Def.'s Resp. at 5.)

The Supreme Court has determined that depreciation should be incorporated into net income calculations. In *Weiss v. Wiener*, 279 U.S. 333, 335-36 (1929), the Court found that in order to be deducted, depreciation must be "actual and present," not "merely contemplated," but "[i]f the taxpayer owns the property the loss actually has taken place." *See also Bradley v. Comm'r*, 184 F.2d 860, 862 (7th Cir. 1950) (stating that "in computing net income for federal income tax purposes there shall be allowed as a deduction from gross income a reasonable allowance for the exhaustion, wear and tear commonly referred to as depreciation"). Likewise, in *V. Lowers Gambrinus Brewery Co. v. Anderson*, 282 U.S. 638, 642-43 (1931), the Court noted that "[t]he cost of plant depreciation, i.e., exhaustion, wear, tear, and obsolescence, is a part of operating expenses." A party may determine depreciation cost by considering the "sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will . . . suffice to provide an amount equal to the original cost." *United States v. Ludey*, 274 U.S. 295, 300-01 (1927).

Given this authority, the court finds that depreciation qualifies as an operating expense and may be properly included in the net income calculation under the Agreement. *See Weiss*, 279 U.S. at 335. But again here, only two months of

8

depreciation should be deducted for the November/December 2019 time period. To be sure, the court must "tak[e] into account the amount of such cost that is justly attributable to that period of time" in question. *V. Lowers Gambrinus Brewery Co.*, 282 U.S. at 643. The court rejects Plaintiff's argument that depreciation should be excluded merely because it was not mentioned in the 2018 Net Income Statement. (R. 52, Pl.'s Reply at 3.)

Plaintiff asks the court to sanction Defendant for abusing her position of majority control, deviating from previous financial practices, and "egregiously" misapplying the net income formula. (R. 43, Pl.'s Mem. at 8.) In the alternative, Plaintiff seeks discovery regarding Defendant's net income calculation. (Id. at 8-9.) The court denies both requests. Plaintiff has not met his burden of providing clear evidence of Defendant's failure to act in good faith, *Betco Corp. v. Peacock*, No. 14 CV 193, 2015 WL 856603, at *15 (W.D. Wis. Feb. 27, 2015), and the settlement terms are not so ambiguous as to require additional discovery.

After adjusting the net income calculation in light of the rulings set forth above, the court finds that Plaintiff is entitled to an additional $7,176.32 in net income for the November/December 2019 period. Plaintiff asks for $9.091.09 in net income, (R. 42, Pl.'s Mot. at 3), but the court modifies Plaintiff's proposed net income calculation by eliminating the following $37,360.49 from the listed expenses: (1) $20,580.49 for four months of real estate taxes ($30,870.74 / 6 x 4); and (2) $16,780 for the HVAC capital improvement. The net income here is calculated by subtracting the court's modified listed expenses ($77,412.96 – $37,360.49 = $40,052.47) from the

9

total income amount of $75,934.08, which equals $35,881.61. (Id.) Accordingly, Plaintiff is entitled to an additional payment in the amount of $7,176.32 ($35,881.61 x 0.2).

## Conclusion

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part, and the Agreement is enforced as explained above in the amount of $7,176.32.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**