### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ALAN GULL,** | ) | |
| | ) | **No. 15 CV 4931** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **ANN MARIE ESTRADA,** | ) | |
| | ) | **June 12, 2023** |
| Defendants. | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiff Alan Gull filed this action in 2015 seeking declaratory and equitable relief relating to six real properties, including a commercial office building located at 931 Ridge Road, Munster, Indiana ("Ridge Property"). The court dismissed the case without prejudice in January 2016 after the parties settled and reinstated the case in April 2020 and then again in August 2020 to enforce the terms of the parties' Settlement Agreement ("Agreement"). Before the court is Plaintiff's third motion to reinstate and to enforce the terms of the Agreement. For the following reasons, the motion to reinstate is granted, but his request for relief is denied:

### Background

The parties entered into the Agreement in December 2015. The Agreement includes a "Dispute Provision" requiring the parties to dismiss the case without prejudice subject only to "the right to enforce the terms of this Agreement." (R. 38, Agreement ¶ 15.) In the Agreement the parties consented to the court's reserved jurisdiction and agreed that the court's decision as to any dispute would be final. (Id.) On December 28, 2015, the parties filed a stipulation to dismiss the lawsuit.

(R. 24.)  In response, the court dismissed the case without prejudice on January 4, 2016, but retained jurisdiction solely to enforce the terms of the Agreement.  (R. 25.) The court subsequently warned the parties that it would not maintain such jurisdiction indefinitely.  (R. 41.)

Under the Agreement Defendant retains 100 percent ownership in the Ridge Property, but Plaintiff is entitled to 20 percent of the net income from the property until it is sold.  (R. 38, Agreement ¶¶ 7(a) & (c).)  The Agreement defines "net income" as "the gross income generated by the Ridge Property minus normal monthly payments on the Ridge Permitted Indebtedness and the normal and customary operating expenses of the Ridge Property."  (Id. ¶ 7(h).)  The court previously determined that net income should be distributed annually, such as "at fiscal year-end when the property management company reports income and losses."  (R. 41, April 23, 2020 Mem. Opinion and Ord. at 7.)  Plaintiff now asserts that Defendant failed to pay him his 20 percent share of the Ridge Property's annual net income in 2020, 2021, and 2022, in violation of the Agreement, and that Defendant breached her duty of good faith and fair dealing by allegedly failing to market and lease Ridge Property's units.  (R. 61, Pl.'s Mem. at 2.)  Plaintiff seeks an order requiring Defendant to produce the documents supporting the 2020-22 net income calculation so that he may determine the amount past due.  (Id. at 8.)

## Analysis

Plaintiff again moves the court to reinstate this action to enforce the terms of the Agreement.  Neither party contests the court's power to enforce the Agreement.

*See Voso v. Ewton*, No. 16 CV 190, 2017 WL 365610, at \*2 (N.D. Ill. Jan. 25, 2017) (holding that a court has "the inherent or equitable power summarily to enforce an agreement to settle a case before it") (internal citation omitted). But the court still must have subject matter jurisdiction to do so. Such jurisdiction may be conferred either from an independent basis, such as diversity of citizenship, or the court's explicit retention. *Id.* at \*3.

Here, the court explicitly retained jurisdiction to enforce the terms of the Agreement, and as such, possesses ancillary jurisdiction to do so. (R. 25.) *See Lucille v. City of Chi.*, 31 F.3d 546, 548 (7th Cir. 1994) (holding that where a federal district court expressly "reserves authority to enforce [a] settlement, the court possesses ancillary jurisdiction to enforce the settlement"). Although such jurisdiction "does not exist in perpetuity," *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, No. 01 CV 9389, 2013 WL 6224489, at \*5 (N.D. Ill. Dec. 2, 2013), Plaintiff promptly sought relief following the alleged breach at issue[1] after it occurred. The court therefore has jurisdiction to enforce the Agreement. However, for the reasons explained below, the court now terminates its jurisdiction over the Agreement going forward by dismissing the action with prejudice. Accordingly, the parties must litigate any future disputes over the terms of the Agreement in a different forum.

---

[1] Although Plaintiff submits this motion years after the alleged Fiscal Year ("FY") 2020 and 2021 harm, he did promptly file complaints with the Circuit Court of Cook County and the Northern District of Indiana in relation to these claims. (See R. 61, Pl.'s Mem. at 4.) Both courts dismissed the complaints for lack of jurisdiction. (Id. at 4-5.)

A.    **Duties Under The Agreement**

The parties agree that 20 percent of net income from the Ridge Property since November 1, 2019, must be paid to Plaintiff on an annual basis at FY end.  (R. 34, Def.'s Resp. at 1-2; R. 36, Pl.'s Reply at 2.)   But the parties disagree about the amount owed to Plaintiff for FY 2020, 2021, and 2022.  Plaintiff alleges without specificity that Defendant failed to pay the net income owed for these three years and claims that Defendant "failed to provide any correspondence or financial information to justify why she has made no payments."  (R. 61, Pl.'s Mem. at 6.)  To remedy this alleged deficiency, Plaintiff asks the court to reinstate the matter and "either order [Defendant] to produce substantive or verifiable records concerning the Net Income of the Ridge Property or grant [Plaintiff] leave to issue discovery" regarding the same.  (Id.)  But Defendant argues—and this court has previously ruled—that she is not obligated under the Agreement to provide Plaintiff with the financial records demonstrating the net income calculation.  (R. 66, Def.'s Resp. at 3; see also R. 41 at 9 ("However, Defendant is correct that the Agreement does not require the disclosure of such reports.").)   Furthermore, Defendant has already provided Plaintiff with some documentary support for the income for the relevant years.  Defendant need not provide further support to Plaintiff.

Although the court has noted previously that "provid[ing] relevant financial reports may be in both parties' interests as a prudent way to reduce the likelihood of future litigation over payments related to the Ridge Property," the Agreement does not require Defendant to produce any records to Plaintiff supporting the net

income calculation.  (R. 41 at 9.)  Nevertheless, Defendant did provide Plaintiff with some supporting documents.  (R. 66, Pl.'s Resp. at 3-5.)  On December 29, 2022, in response to Plaintiff's "written demand," Defendant provided Tax Form 1120-S for FY 2020 and 2021 and a supporting letter describing the reasoning behind the lack of net income payment for those years.  (See R. 66, Pl.'s Resp. at 4; R. 66-1 at 1-3; R. 71, Pl.'s Reply at 1.)  Further, when Defendant sent Plaintiff his FY 2022 net income share, she also provided Tax Form 8825, "which evidenced how the income calculations were arrived at and all information that was relevant to that calculation that was provided to the Internal Revenue Service."[2]  (R. 66, Pl.'s Resp. at 5; see also R. 66-2 at 1.)  In doing so, Defendant exceeded her contractual obligations and followed this court's recommendation to provide documentation to avoid further conflict.  The court cannot order Defendant to produce documents where the Agreement does not require it.

Nor does Defendant's implied duty of good faith and fair dealing require her to produce more documents.  To demonstrate a breach of this covenant, a party must show that: (1) "the contract vested the opposing party with discretion in performing an obligation under the contract"; and (2) the "party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties."  *LaSalle Bank Nat'l Assoc. v. Paramont*

---

[2]  This court appreciates that an entry of $49,512 was recognized as "Other" under the "Rental Real Estate Expenses" column, which directly affects Plaintiff's share of net income.  (See R. 66-2 at 1.)  The entry refers to a statement providing further detail, but it was not attached to Defendant's Response.  (Id.)  Plaintiff does not mention this in his reply, but even if he had, as noted, Defendant exceeded her explicit contractual obligations by providing the form.

*Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir. 1992); *Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 161-62 (Ill. App. Ct. 2007)). Here, the Agreement affords Defendant discretion in calculating FY net income and distributing 20 percent of that income to Plaintiff. While Defendant must carry out this calculation in accordance with Plaintiff's and her own reasonable expectations, that duty "does not necessarily require [her] to exert [her] best efforts." *Beraha*, 956 F.2d at 1445. In retaining accountants to calculate the net income and prepare the related tax disclosures and forms, and in supplying Plaintiff with tax records indicating the total net income after operating expenses, the court finds that Defendant reasonably complied with the implied covenant. Further, outside counsel represented both parties in negotiating the Agreement, and negotiations occurred at least between September and December 2015. (See R. 11-25.) There was thus an opportunity to require Defendant to provide Plaintiff with information supporting her net income values or to involve Plaintiff in the process, and yet the Agreement is silent on this point. Plaintiff's request to compel production is therefore denied.

Plaintiff also alleges that commercial rental units at the Ridge Property were vacant for approximately two years, which he claims demonstrates Defendant's failure to use reasonable efforts to maximize the property's income and constitutes a breach of the implied covenant. (R. 61, Pl.'s Mem. at 7.) In response, Defendant first explains that the COVID-19 pandemic "created unprecedented and unforeseen issues," which "had a significant impact on commercial landlords, such as [herself],

who relied on quality-paying tenants to sustain the business model." (R. 66, Def.'s Resp. at 6.) As a result of the pandemic, some tenants left the building in 2020 and 2021 because of financial struggles. (Id.) Defendant states that she "employed a broker to solicit potential tenants to lease vacant units," but finding "quality tenants" to take over the leases was challenging. (Id.) That said, she did find new tenants beginning in 2022 and enjoyed net income at 2022 FY end, as indicated by Plaintiff's receipt of his share of the net income for that FY. (Id.; see also id. at 5; R. 66-2 at 1.) She also explained that a long-term tenant's CEO died at the beginning of the pandemic, resulting in that business choosing not to renew its lease. (R. 66, Def.'s Resp. at 6.) Finally, as of the date of Defendant's response to Plaintiff's motion, "most of the formerly vacant units are now leased." (Id.) Defendant concludes by reminding Plaintiff that she "gains no benefit, tangible or otherwise by having units remain unoccupied as a net loss," given that losses impact her 80 percent share of the net income. (Id. at 7.)

The court agrees with Defendant that she also has met her obligations here. Plaintiff fails to demonstrate that Defendant "manage[d] the Ridge Property in a manner that . . . unduly prejudice[d] [his] property interests in the property" in bad faith or "in a manner inconsistent with the reasonable expectations of the parties." (See R. 61, Pl.'s Mem. at 7); see also Beraha, 956 F.2d at 1443-45. As a commercial landlord, it is unsurprising that Defendant lost tenants and had difficulty replacing them during the pandemic. The loss of one commercial tenant because of the death of its CEO likewise is unsurprising. Regardless, Defendant appears to have

exercised good faith by employing a broker to find tenants to lease the units within the property. And it is worth noting that income losses from FY 2020 and 2021 impacted Defendant more than they impacted Plaintiff. For these reasons, the court rejects Plaintiff's claim that Defendant neglected her duty of good faith and fair dealing in relation to the Agreement.

## B.    Retention of Jurisdiction

This court now terminates its jurisdiction over the enforcement of the Agreement. Federal courts exercise only limited jurisdiction, which, as noted, "does not exist in perpetuity." *Loeffel Steel Prods.*, 2013 WL 6224489, at \*5 (citing *Brass Smith, LLC v. RPI Indus., Inc.* 827 F. Supp. 2d 377, 380 (D. N.J. 2011) (citation omitted)). Even where a federal court explicitly authorizes its ancillary jurisdiction over a settlement agreement, the "settlement agreement cannot dictate when that jurisdiction must be exercised or that it must be retained forever." *Id.* at \*3, \*5 (citations omitted). It thus follows that a federal court may "decide to terminate or divest itself entirely of jurisdiction over the settlement agreement," *Brass Smith*, 827 F. Supp. 2d at 383; *see also Loeffel Steel Prods.*, 2013 WL 6224489 at \*5, particularly where it is "modify[ing] a decree in response to changed conditions," *Brass Smith*, 827 F. Supp. 2d at 382 (citing *Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 270 (3d Cir. 2001)).

This court previously has assisted the parties with interpreting the Agreement's key terms and has offered further guidance as to the parties' obligations. Almost eight years have passed since the Agreement's execution, and

almost four since Plaintiff raised the net-income payment issue. Given the lack of any independent basis for federal jurisdiction in this matter and unique purpose achieved in continuing jurisdiction to this point, this court terminates its jurisdiction over the matter by dismissing the case with prejudice.

## Conclusion

For the foregoing reasons, Plaintiff's motion to reinstate the case is granted but his request for relief is denied.

ENTER:

Young B. Kim
United States Magistrate Judge